IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PERRY K. BURLISON                                                                  PLAINTIFF

                    v.                      Civil No. 09-2155

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Perry Burlison, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**    **Procedural Background:**

The plaintiff filed his application for SSI on April 4, 2008, alleging an onset date of November 30, 2006, due to congestive heart failure, back pain, hypertension, lung problems, diabetes, back and knee pain, obesity, and anxiety disorder. Tr. 29, 76, 122, 141, 174, 184.

An administrative hearing was held on October 17, 2008. Tr. 21-70. Plaintiff was present and represented by counsel. At this time, plaintiff was 52 years of age and possessed an eleventh grade education. Tr. 26, 85. He had past relevant work ("PRW") experience as a brick layer, deck hand, relief hand, carpenter, and framer. Tr. 34-36.

On February 4, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's hypertension, obesity, alcohol abuse, and anxiety disorder did not meet or

equal any Appendix 1 listing. Tr. 78-81. She found that plaintiff maintained the residual functional capacity ("RFC") to perform unskilled, light work involving only occasional exposure to workplace hazards such as humidity, airborne irritants, and temperature extremes. Tr. 82-85. With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as a fast food worker, cashier II, and machine tender.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 27, 2009. Tr. 143. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 12.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

AO72A
(Rev. 8/82)

### III. <u>Evidence Presented:</u>

On January 16, 2007, Plaintiff presented at the emergency room with complaints of shortness of breath and chest pain. Tr. 200-210. He stated that he had been prescribed a blood pressure pill and a diuretic one year prior, but has stopped taking these medications approximately six months later. Plaintiff also admitted to drinking a 12 pack of beer per day. Plaintiff was admitted for observation. A thalium study revealed no evidence of focal ischemia and a chest x-ray was normal. An echocardiogram revealed preserved left ventricular systolic function with probable moderate concentric left ventricular hypertrophy, no sign of valvular abnormalities were identified, borderline left atrial enlargement, and grossly normal right heart structures. The doctor indicated that he had a subjective ejection fraction rate of 60-65%. A nuclear medicine myocardial rest and stress perfusion study with wall motion study and ejection fraction calculation was conducted on January 18, 2007, revealed a small inferior apical defect, no more than one percent of myocardium, no significant defects, and an ejection fraction rate of 52 percent. Tr. 209-210. Plaintiff was diagnosed with congestive heart failure. Dr. J. Phillip Agent instructed him on alcohol and tobacco cessation and weight loss. He was released home on January 20, 2007, and prescribed Prevachol. Tr. 200-210.

On January 30, 2007, a chest x-ray revealed mild hyperinflation of the lungs and mild prominence of the cardio mediastinal. Tr. 211. At this time, Plaintiff's A1c, which is a measure of his blood sugar levels of a three month period was 6.2, which is only slightly elevated. Tr. 211.

Although the ALJ mentions medical records dated January 30, 2007, and February 26, 2007, these records are not contained in the record. Neither Plaintiff nor the Defendant mention these records in their briefs.

On March 2, 2008, Plaintiff was treated by Billy Noel, an Advanced Practical Nurse. Tr. 198. Plaintiff had a history of hypertension and needed medication refills. His blood pressure was 146/88 and Plaintiff reported some edema, obesity, and dyspnea with manual exertion. His mood and affect were normal. Mr. Noel diagnosed him with hypertension and edema and prescribed Soma. Tr. 198.

On June 30, 2008, Nurse Noel treated Plaintiff for edema of the lower legs. Tr. 230, 232. Plaintiff weighed 336 pounds. Mr. Noel noted that Plaintiff was out of medication and had been non-compliant, purchasing beer instead of his medications. An examination revealed wheezes, edema, and abnormal lower extremities. Mr. Noel diagnosed Plaintiff with hypertension, edema, and insomnia. He prescribed Lasix, Mercardis, and Lisinopril.

This same date, Mr. Noel completed an attending physician's statement. Tr. 234. On this statement, he indicated that Plaintiff's symptoms were severe enough to interfere with his concentration, affect his ability to tolerate work stress, and would require him to take unscheduled breaks during an 8-hour workday. He also concluded that Plaintiff's impairments would cause him to miss more than four days of work per month and would affect his ability to perform fine manipulation with both hands. Mr. Noel indicated that Plaintiff's diagnoses were severe diabetes and uncontrolled heart disease. Tr. 234.

On September 23, 2008, Plaintiff's blood pressure had improved. Tr. 236. However, he was now experiencing anxiety attack. Plaintiff indicated that his medications were effective.

At this time, Plaintiff weighed 234 pounds. Mr. Noel diagnosed Plaintiff with hypertension, edema, insomnia, anxiety, pain, and heavy alcohol use. Tr. 236.

On January 19, 2009, Plaintiff was not sleeping or breathing well. Tr. 239-240. He also complained of shortness of breath, pain, swelling and stress. At this time, his blood pressure was 120/72 and he weighed 337 pounds. Plaintiff admitted having two to three beers per night and smoking a package and a half of cigarettes per day. An examination was within normal limits. Mr. Noel diagnosed Plaintiff with hypertension, edema, insomnia, and chronic heart failure. He prescribed Micardis, Lisinopril, Zithromax, and Lasix. Tr. 239-240.

On April 3, 2009, Mr. Noel noted that Plaintiff had been non-compliant with his diabetes medications and reported some urinary frequency. Tr. 230, 241. He diagnosed Plaintiff with hypertension and obesity, noting that he was trying to improve but made poor judgments. His blood pressure was 136/70. An examination revealed crackles/wheezes, but was otherwise normal. Plaintiff was prescribed Lisinopril, Lasix, Hydrocodone, and Avandaret. Tr. 230, 241.

On April 30, 2009, Plaintiff's blood sugar levels were coming down and he was taking his medication as prescribed. Tr 237, 242. Although he continued to experience shortness of breath, Plaintiff had quit smoking and had a normal exam. Mr. Noel diagnosed him with diabetes, hypertension, and edema. He prescribed Lorcet, Potassium Chloride, Lisinopril, and Furosemide. Tr 237, 242.

**IV. Discussion:**

Plaintiff contends that the ALJ erred in concluding that his subjective complaints were not credible, failing to develop the record further, failing to consider Mr. Noel's treating physician's statement, failing to properly consider the side effects of Plaintiff's blood pressure

medications, improperly determining Plaintiff maintained the RFC for light work, and presenting an improper hypothetical question to the vocational expert.

### A.      Subjective Complaints/Severity of Impairments:

When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the

7

alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

### 1. Physical Limitations:

In the present case, plaintiff alleged disability due to congestive heart failure, hypertension, lung problems, back and knee pain, diabetes, obesity, and anxiety. Tr. 29, 76, 122, 141, 174, 184.

In 2007, Plaintiff was hospitalized for congestive heart failure. At this time, records showed Plaintiff had not been taking his medications as prescribed. Once medications were reinstated, Plaintiff's condition improved. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). We note that Plaintiff's congestive heart failure required no additional hospitalization after 2007. In fact, he did not again seek treatment for any impairments until March 2008, when he was treated for hypertension and edema. Certainly, no further emergency treatment, medical tests, or surgery was ever required. And, records indicate that Plaintiff was not totally compliant with his medication regimen after being released from the hospital in 2007, which resulted in additional complaints of shortness of breath and edema. However, his condition was responsive to the proper medications. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). And as such, we can not say his condition is disabling.

AO72A
(Rev. 8/82)

Likewise, plaintiff was diagnosed with hypertension. Again, records indicate Plaintiff did not take his medication as prescribed. *See Guilliams*, 393 F.3d at 802. When hospitalized in 2007, Plaintiff indicated that he had been prescribed blood pressure medication and a diuretic the previous year and had stopped taking these medications six months prior. Nurse Noel's records also indicate that Plaintiff was non-compliant with his medications. Records indicate he bought beer with his money, instead of medication. When Plaintiff took his medication as prescribed, it is very apparent that his blood pressure responded well. As his condition was responsive to treatment when the medication was taken properly, we can not say that plaintiff's hypertension rendered him disabled. *See Brown*, 390 F.3d at 540.

Insomnia was another problem alleged by plaintiff, and the record does indicate that plaintiff sought treatment for this on several occasions. However, the record indicates that Plaintiff was not compliant with his medications. When Plaintiff was taking his medications as prescribed, insomnia does not appear to have been a problem. *See Brown*, 390 F.3d at 540.

The record does establish that Plaintiff was experiencing some shortness of breath, wheezing, and crackles. We do not, however, find any evidence to indicate that Plaintiff was diagnosed with chronic obstructive pulmonary disease or prescribed any medication to treat this condition, aside from the Lasix prescribed to treat his congestive heart failure. Therefore, while we do believe this could make Plaintiff sensitive to environmental irritants and hazards, we can not say this condition was disabling.

Plaintiff does complain of some back and knee pain. Although he was prescribed Lortab or Hydrocodone on a few occasions, there is no objective medical evidence to establish a disabling condition. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack

9

of objective medical evidence is a factor an ALJ may consider). Likewise, in spite of his contention that he suffers from carpal tunnel syndrome, he was not diagnosed with this impairment during the relevant time period.. Further, there are no nerve conduction studies to indicate that Plaintiff was suffering from this condition.

We note that the medical records do establish that Plaintiff was obese. While we do agree with the ALJ's conclusion that his obesity exacerbated his lung and heart conditions and increased his pain, we do not believe this impairment was severe enough to render him disabled. It is clear that Plaintiff continued to perform a variety of activities, in spite of his obesity. He continued to work, cared for himself and his dog, and remained capable of performing light house chores and small repairs. We also note that Plaintiff was instructed with regard to weight loss when hospitalized in 2007. It does not appear that the doctors evaluating Plaintiff believed that any of his medical conditions would prevent him from embarking on a weight loss program. Accordingly, although somewhat limiting, we do not believe his obesity was disabling.

There is also limited evidence in the record to indicate that Plaintiff was suffering from diabetes. Mr. Noel diagnosed him with diabetes on only two occasions during the relevant time period. In 2007, his blood sugar level was elevated, but his A1c level was only slightly elevated at 6.2, with 6.0 being normal. However, we can find no evidence to indicate that Plaintiff was ever treated for this condition. *Id*. None of the medications prescribed to Plaintiff are medications used to treat diabetes. Further, it does not appear that Plaintiff was advised to check his blood sugar levels regularly, prescribed a low carbohydrate diet, or prescribed insulin. Therefore, although Mr. Noel concluded on his assessment that Plaintiff's diabetes was severe, we can find no evidence to support his conclusion. *See Bowen v. Yuckert,* 482 U.S. 137, 153

(1987) (O'Connor, J., concurring) (holding that an impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities); 20 C.F.R. § 404.1521(a).

We also note that Plaintiff continued to work, albeit part-time, until two months prior to the administrative hearing. *See Curran-Kicksey v. Barnhart*, 315 F.3d 964, 969 (8th Cir. 2003) (holding that even part-time work is inconsistent with claim of disability). In April 2008, Plaintiff reported working off and on providing relief to workers watching a gauge on a gas well. Had his condition been as severe as alleged, we do not believe Plaintiff would have been able to continue working.

### 2. **Mental Impairments:**

Records indicate that plaintiff also suffered from anxiety. However, aside from a diagnosis of anxiety, we can find no evidence to indicate that Plaintiff was ever prescribed medication for this condition. There is also no evidence that Plaintiff sought out mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

Plaintiff also reported getting along well with authority figures, no problems handling stress, and no problems handling changes in routine. Tr. 157-158. Thus, based on his own admissions, it does not appear that his anxiety impacted his ability to perform work-related activities.

11

### 3. Activities of Daily Living:

Plaintiff's own reports concerning his daily activities also undermine his claim of disability. On an adult function report, plaintiff indicated that he fed and played with his dogs, cared for his personal hygiene, prepared simple meals, washed the laundry, performed small repairs, went outside, shopped for food, paid bills, counted change, used a checkbook/money orders, read the newspaper, worked puzzles, watched television, and talked to friends and family. Tr. 152-159. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

### 4. Continued Work:

Perhaps the most damaging, however, is plaintiff's own testimony that he continued to work until two months prior to the administrative hearing. Plaintiff stated that he worked "off and on" providing relief for workers watching a gauge on a gas well. Tr. 78. "Seeking work and working at a job while applying for benefits are activities inconsistent with complaints of disabling pain." *Dunahoo*, 241 F.3d at 1039; *Wiseman v. Sullivan*, 905 F.2d 1153, 1156 (8th Cir. 1990) (search for work and finding part time employment is inconsistent with disability); *See Johnson*, 108 F.3d at 180 (the Commissioner cannot find a claimant disabled for the period when

he was receiving unemployment compensation). Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005); *Gowell v. Apfel,* 242 F.3d 793, 798 (8th Cir.2001).

### B. Develop the Record:

Plaintiff alleges that the ALJ erred in failing to develop the record further with a consultative exam. "A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted). Where "the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing." *Id*. (internal quotations and citation omitted). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id*. (internal quotations and citation omitted).

After reviewing the entire record, we believe the ALJ had sufficient evidence upon which to base her opinion. None of the evidence of record shows Plaintiff's condition to be as disabling as alleged. Although the ALJ did not have the benefit of the 2009 treatment records from Mr. Noel, we can find nothing in those records that would have affected her determination in this case. If anything, his records bolster the ALJ's conclusion that Plaintiff's non-compliance was a major contributing factor in this case.

### C. Billy Noel's Assessment:

Plaintiff contends that the ALJ failed to properly consider Mr. Noel's RFC assessment of Plaintiff. In his assessment, Mr. Noel essentially concluded that Plaintiff was disabled.

13

However, we note that Mr. Noel is a nurse practitioner. Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2007). According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, id., (2) only acceptable medical sources can provide medical opinions, 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2007), and (3) only acceptable medical sources can be considered treating sources, 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2007). Being a nurse practitioner, Mr. Noel is not an acceptable medical source who is qualified to provide an assessment of Plaintiff's work-related limitations. Further, because his assessment has not been affirmed by a supervising doctor or other acceptable medical source, we do not believe Mr. Noel's opinion was entitled to significant weight.

We also note that Mr. Noel's opinion is inconsistent with his own treatment records. He appears to have treated Plaintiff on approximately five occasions for hypertension, edema, and insomnia. He repeatedly prescribed only conservative treatment for Plaintiff's condition, namely medication. His examinations were also consistently normal, with the exception of some occasional wheezing. As such, we do not believe the ALJ erred in failing to give Mr. Noel's opinion controlling weight.

### D. Medication Side Effects:

In addition, Plaintiff contends that the ALJ failed to consider the side effects of his blood pressure medication and diuretic. He states that these medication require him to take frequent restroom breaks. We note, however, that Plaintiff reported frequent urination on only one

14

occasion during the relevant time period. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Although Mr. Noel stated Plaintiff would need to take unscheduled breaks, the record contains no evidence to indicate that Plaintiff was suffering from a mediation side effect or an impairment requiring him to take these breaks regularly. Accordingly, we can not say the ALJ erred.

  E. **Economic Hardship:**

Plaintiff contends that his failure to seek more consistent treatment and take his medication as prescribed should be dismissed due to economic hardship. Clearly, if the claimant is unable to follow a prescribed regimen of medication and therapy to combat his disabilities because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits. *Tome v. Schweiker,* 724 F.2d 711, 714 (8th Cir.1984). While these hardships can be considered in determining whether to award a claimant benefits, the fact that he is under financial strain is not determinative. *Benskin,* 830 F.2d at 884. here is no indication that he sought out other services that would have enabled him to obtain his prescription medications for free or at a reduced cost. Likewise, there is no evidence that he was ever refused treatment due to his lack of insurance and inability to pay.

Further, we note that Mr. Noel's notes indicate that Plaintiff spent his money on alcohol, rather than medication. And, additional records indicate that Plaintiff continued to drink two to three beers per day and smoke cigarettes as late as January 2009. Accordingly, we can not say that his failure to take his medication as prescribed or seek more consistent treatment is excused by his financial strain.

### F. The ALJ's RFC Assessment:

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or his RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or his limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ properly considered plaintiff's subjective complaints, the objective medical evidence, Mr. Noel's statement, and the RFC assessments of the non-examining, consultative doctors. She then found plaintiff could perform light work with occasional exposure to workplace hazards such as humidity, airborne irritants, and temperature extremes. Tr. 82-85.

On May 23, 2008, Dr. Ronald Crow completed an RFC assessment. Tr. 219-225. After reviewing Plaintiff's medical records, he concluded Plaintiff could perform a full range of light work. Dr. Crow opined that Plaintiff's functional allegations were not consistent with the

16

longitudinal medical evidence or his most recent physical exam. He also noted no evidence of congestive heart failure since Plaintiff's diagnosis and treatment in January 2007. Dr. Crow also questioned Plaintiff's reported level of pain given his lack of pain relief seeking behavior. Tr. 219-225.

After reviewing the entire medical record, we conclude that substantial evidence supports the ALJ's RFC assessment. As previously noted, Plaintiff was not compliant with his medication, continued to work after his alleged onset date, and continued to consume alcohol and smoke cigarettes in spite of his underlying medical conditions. He was hospitalized for his condition on only one occasion and responded well to conservative treatment the remainder of the relevant time period, as long as he took his medication as prescribed. Accordingly, the ALJ's RFC will stand.

### G.    Vocational Expert's Testimony:

Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence. *See Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir. 1996); *cf. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* (citing *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993)); *see also Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994).

The vocational expert testified that a person of plaintiff's age, education, and work background with the above RFC, could still perform work as a fast food worker, cashier II, and

machine tender. Tr. 63-70. As the records indicates that plaintiff was able to perform part-time work as a relief hand during most of the relevant time period, we find substantial evidence to support the ALJ's determination that plaintiff could perform these jobs.

### V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 7th day of January 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE